## Stewart Dry Goods Company v. Boone.

(Decided April 19, 1918.)

### Appeal from Jefferson Circuit Court (Common Pleas, Division No. 1).

1. Appeal and Error—Law of the Case.—Upon a second appeal the opinion rendered on the first appeal is the law of the case, binding both upon the trial court and this court.

2. Appeal and Error—Res Judicata.—Where a question of proximate cause of an injury is presented and considered upon the first appeal, it becomes res judicata upon the second appeal.

3. Trial—Instructions.—It is not error for the trial court to exclude evidence tending to establish a custom among a certain class of workers when the court at the time announces his purpose to give, and does in fact give to the jury an instruction directing them to find for defendant if plaintiff spoke the words which defendant contends was evidence of the custom.

4. Damages—When Verdict Not Excessive.—Where the injury complained of to the leg is permanent and reduces the earning power of complainant, a verdict of two thousand dollars can not be said to be excessive.

5. Damages—Personal Injuries—Surgical Operation.—One is not required to undergo a serious surgical operation in order to repair an injury wrongfully inflicted by another in order to minimize the damage, but he must exercise ordinary care not to aggravate or increase the injury.

6. Damages—Recovery—Physicians and Surgeons—One who exercises ordinary care to secure a competent physician and surgeon to treat him for an injury is not chargeable with any neglect or unskillfulness of the physician or surgeon, and his recovery will not be reduced on that account.

7. Damages—Surgical Operation—Elements of Damages.—Where a surgical operation is necessary in order to repair an injury to a limb inflicted through the negligence of another in order to minimize the resulting damage and reduce the recovery, the pain, suffering, loss of time and expenses incident to such operation are elements of damage which may be taken into consideration in a suit to recover for the negligence.

BENNETT H. YOUNG, R. C. KINCAID and MARION W. RIPY for appellant.

BENJAMINE GARDNER for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

William Boone, a colored man about fifty years of age, was engaged by the appellant, Stewart Dry Goods Company, as one of a crew employed by it in handling pianos

and piano players. Shortly after his employment and on the 5th day of June, 1915, while attempting to deliver a piano in Louisville, appellee, Boone, was severely injured in his legs. He instituted this action in the Jefferson circuit court, common pleas, division number one, to recover damages, alleging negligence on the part of the company. The case was tried and the jury returned a verdict in favor of Boone for six hundred and sixty dollars. From that judgment the company appealed to this court and the judgment was reversed. This opinion is found in 175 Ky. 271. On a second trial Boone was awarded a verdict for two thousand dollars, and motion and grounds for new trial being overruled, the company again appeals.

The injury came about in this way: The crew of four colored men engaged in handling pianos was under the direction of a foreman, one Spies, a white man; they were required to deliver a very heavy piano on Sneed street, and to do so conveyed the instrument to the pavement in front of the house by means of a motor truck. The piano was then lifted from the truck to the pavement and carried by the crew up the walk towards the house; appellee Boone was at the forward end of the piano moving backward up the steps to the porch, while the other three men were at the rear of the piano lifting and pushing. There was a flight of five steps leading from the walk up to the porch floor; the porch floor was a little more than eight feet wide, and from the porch floor into the house was another step about six inches high. When the crew with the piano reached the porch floor appellee, Boone, claims that he started to lower the piano on the porch, according to the custom, so that one of the men at the rear could come forward and assist him in carrying the front end, and that all of them might have a brief rest and take new holds and positions at the piano. Just as he was about to lower the piano Boone asserts that Spies, the foreman of the gang, said "keep her up boys," and in attempting to obey the order he moved towards the door bearing almost half the entire weight of the piano, and in attempting to raise his foot over the step going into the house he stumbled, partly from exhaustion and partly from the great weight which he was attempting to carry, and the piano fell upon his legs inflicting the injuries of which he now complains. Boone further asserts that it was a use and cus-

tom recognized by all persons handling pianos, under circumstances similar to those involved in this case, to carry the piano upon the porch floor and to set it down while the men rested and took new holds, and that the foreman, Spies, in giving the order "keep her up boys," violated this custom, and thereby brought about appellee's injury. For the company it is claimed that Boone after reaching the porch floor said, "Come on boys," or "come on," and that Spies, the foreman, gave no order whatever.

Appellant company now insists that the injury was not the direct and proximate result of the plan or mode adopted, or the order given, if either was adopted or given by the foreman, but insists that there were intervening causes. However this may be, that question can not now be relied upon for the reason that it is *res judicata*. The opinion upon the first trial is the law of the case, binding both upon the trial court and this court. The judgment was reversed for a new trial and distinctly recognized the right of plaintiff to recover upon his theory of the case should the facts sustain it. The opinion reads: "But it is further argued that plaintiff's evidence fails to show that the foreman's command to keep the piano up, even if negligent, was the proximate cause of plaintiff's injury . . . . While it is true that plaintiff's evidence as to the cause of the injury is not as clear as it might be, we conclude that he and his witnesses do testify to facts from which it can be reasonably inferred that, because of the foreman's command, he was required to continue to carry a weight that was so heavy that he could not bear it, and at the same time raise his foot above the step at the door while proceeding backwards. Under these circumstances, we are of the opinion that it was for the jury to say whether or not the command, if given, was the proximate cause of plaintiff's injury, and whether plaintiff was himself guilty of contributory negligence." It is therefore too late to make the point even if it were meritorious, which we do not agree is true, that the injury complained of is not the direct and proximate result of the negligence of the defendant company, or its foreman.

Only two other questions are presented and relied upon by appellant: (1) the failure of the trial court to allow it to prove by a witness introduced by appellee that in moving pianos the man at the front end of the instrument in going up steps was allowed to control or direct

the movement of the piano, and that the entire crew was subject to his orders; (2) excessiveness of the verdict. The appellee was permitted to prove that it was a custom among persons engaged in handling pianos to rest upon the platform or porch after ascending a flight of steps before proceeding. In response to this evidence appellant offered to prove that the man in front, as was Boone in this case, could control the movement of the piano and crew and an objection to such evidence being sustained, appellant avowed that it was a rule and custom among such workers, "that if the man at the rear end of the piano told the other men to come on that it would be usual and customary then to move along in obedience to the direction of the man who was moving the piano." Appellant insists that it was prejudicial error for the trial court to reject this evidence, but we can not agree with this contention in view of the state of the record, for it must be remembered that the court at the time stated to counsel in the presence and hearing of the jury, "I am going to instruct the jury that if Boone told them to 'come on,' it was his own fault," and the court did in fact give such instruction to the jury. It is quite true that if Boone, the injured man, violated the custom of lowering the piano when reaching the porch floor and directed the boys to "come on," he was not entitled to recover, and this the court made plain to the jury. If the court had allowed appellant to introduce evidence tending to prove the custom to be as stated in the avowal, appellant would not have gained an advantage because the court peremptorily told the jury that in case it believed from the evidence that Boone violated the custom of lowering the piano it should find a verdict against him. This was all and more than appellant asked on the trial or contends for in its brief.

Counsel for appellant devotes most of their brief to a discussion of the alleged excessive verdict. Boone was injured in both legs; the knee cap on one leg was broken, and the large tendon which passes from the thigh over the knee cap to the bone below was entirely severed and the ends, like rubber, coiled up on each side of the injury causing a knot both below and above the knee. The separation of this important muscle rendered Boone unable to control the action of his leg in going down grade or down steps. It caused what the physicians who testified on the trial called a "frail joint," and would "buckle" when he attempted to go down steps or down hill.

Before his injury his leg was strong and he had been earning about ten dollars per week. The injury caused him to lose many months of time and to suffer great pain; since he has been able to go about and to engage himself at regular occupation he has been able to earn only about one-half his usual pay before the injury. His expectancy, according to the mortality tables, was at the time of the injury about twenty-one years. According to the physicians who testified his injury is permanent unless by a surgical operation his leg be opened and the detached muscles be drawn over the knee cap with other ligaments and there sewed together. One of the physicians gave it as his opinion that such an operation could be performed without very great danger to the life of the patient, and that in all reasonable probability the leg would be restored to practically its original efficiency, but admitted that it would not likely be as strong or as free in motion as before the injury. The other physician testified that the operation would be a very serious one attended by more or less danger to the life of the patient, and that the greatest success reasonably to be anticipated by such an operation would leave the limb much weaker and with much less efficiency than before the injury. With these facts before the jury we do not consider it strange that a verdict of two thousand dollars was awarded appellee.

The point is also made that the defect in appellee's leg could and should have been remedied by a surgical operation and that appellee has neglected to undergo this operation and for that reason is not entitled to recover the sum awarded by the lower court, or any sum other than nominal damages. This position is not tenable. One who has suffered an injury is not required to undergo a serious and critical surgical operation which would necessarily be attended with risk of failure and of death in order to maintain an action to recover compensatory damages for pain and suffering or the impairment of his power, actually suffered. The text in 13 Cyc., page 76, says:

"One who has been injured by the negligence of another must use ordinary diligence to effect a cure, and there can be no recovery for damages that might have been avoided by the exercise of such care. Only ordinary care is required; and where there has been no neglect on the part of the injured party, and his injuries were

more serious, or resulted more seriously than it was at first supposed they would, there can be a full recovery for the entire result." In Pennsylvania it is held:

"One who has been hurt by the negligence of another is not bound in law to undergo a serious and critical surgical operation which would necessarily be attended with some risk of failure and of death, but must be permitted to exercise the liberty of choice in the matter, and his refusal to submit to the operation, although under the evidence it would probably lessen the effects of the injury, can not be considered in mitigation of damages recoverable therefor. Mattis v. Philadelphia Traction Co., 6 Pa. Dist. 94, 19 Pa. Co. Ct. 106.

From a review of the authorities it may be stated that as a general rule one who is injured in his person by the wrongful or negligent act of another is bound to exercise reasonable care and diligence to avoid loss or to minimize resulting damage, and to the extent his damages are the result of his active and unreasonable enhancement thereof, or are due to his failure to exercise such care and diligence, he can not recover. (8 Ruling Case Law, page 447.)

Dr. Boss testifying concerning the extent of the injury and character of operation necessary to restore, in part, the limb said:

"Well, he (Boone) came to the office after he had previously had Dr. Croft to wait on him. Dr. Croft had died and after Dr. Croft died he came to me. I used to be his family physician, and so I found him suffering with that leg, with the knee there where the tendon was cut loose from the knee cap bone, the patella. The great muscle there was cut loose, and I waited on him for a month or so, and told him there was nothing to do but to operate on him, nothing else would do any good. I plastered it up and he could not walk, and I told him he had to be operated on, for it to give him any relief. Q. You prescribed for him or worked on him with a view of avoiding an operation? A. Yes, sir, I waited on him for a month, or perhaps two months, strapped it up. It was cut loose from the knee cap. Q. What effect did that have upon his walk or sustaining weight? A. He can not walk down hill; he can not hold the leg up; he can walk as long as he holds it straight but he can not walk unless he keeps it absolutely straight. He has no control over it. . . . Q. This operation you speak of, what

kind of operation is that, Doctor? A. Well, it is a pretty big operation. You would have to go down there and cut the knee cap loose and sew the tendons to the knee cap, over it again so that it would grow back, that is the big tendon. . . . Q. Does that require an anaesthetic? A. Yes, sir. . . . " Continuing Dr. Boss said: "This tendon is cut absolutely loose, the tendon there. . . . After it is cut loose there is no remedy only to sew the muscle right down over the knee cap. . . . All you can do is to split the knee bone and bring the tendon over there and sew the cap in there. Q. Doctor, is it absolutely necessary for an operation to be performed in order that he can get any relief from that condition? A. Yes, sir, that is the only thing that will do any good. . . Q. Would the limb be in as perfect condition as it was before? A. Yes, sir; well, you may have a stiffening there if you use it too early; if you use it too early we have ankylosis and the knee would be stiff, but if you would use it at the proper time it will not get stiff."

Dr. Boss further testified that he advised Boone to have an operation performed and that he declined to do so, giving as his reason that he did not have the money necessary to pay for such operation.

"Q. There is some difficulty in opening up a man's leg, is there not? A. Yes, sir, it is a pretty big operation; it is no little one."

It appears that Boone was injured about five o'clock in the afternoon, and shortly thereafter was carried home by his fellow-workmen, and Doctor Croft was called, but did not arrive until about eight o'clock, at which time the injury was examined and treated by the doctor. The doctor came again the next day, and then Boone at the instance of the doctor called for several days thereafter at the doctor's office until Doctor Croft himself took sick and died. After that Dr. Boss was called to attend Boone. There is no complaint that either Dr. Croft or Dr. Boss was unskillful or negligent in the treatment of Boone, and such complaint would not avail in a case like this where the patient exercised ordinary care to obtain a skilled physician. Doctor Croft who first attended Boone did not offer to operate upon him, and Doctor Boss states that it was a month or two months after he began to treat him that he first suggested that Boone should have an operation, and that Boone told him he could not have such operation because he did not

have the money to pay for it. While it has never been held as a matter of law to be the duty of an injured person to submit to a serious surgical operation for the purpose of affecting a cure, he must, however, exercise ordinary care not to aggravate the injury or to increase his damage, and if he fails so to do he can not have a recovery for that part of the injury which was brought about by his failure to exercise that degree of care usually employed by prudent persons under like circumstances. 8 R. C. L. 448, 178 Ky. 486.

The rule seems to be that one who is injured through the negligence of another must exercise ordinary care to effect a cure and to prevent aggravation of the injury, but he is not required to do more than a reasonably prudent person would generally do under similar circumstances, and is never required to submit himself to a serious surgical operation in order to repair the injury suffered if by so doing his life or health is jeopardized, or if the operation would be painfully agonizing, or attended with doubtful results. The injury complained of in this case is not one that has been augmented by the neglect of appellee, but it is such as resulted directly from the negligence of appellant. True, Boone could have submitted to an operation which, barring accident, might have restored his limb to almost its original perfection, but such operation would have entailed much pain and suffering and would not, according to the physicians, have restored the limb absolutely, not to mention the ever-present element of chance attendant upon efforts of this kind. The operation necessary to correct the defect would have been of major importance, and would have produced such pain as would have necessitated an anaesthetic rendering Boone unconscious during its performance. The objection that Boone did not have the operation performed is directed at the excessiveness of the verdict, and if this contention could be considered at all then appellee, if he had submitted to such operation in order to correct the defect occasioned by the negligence of appellant, would be entitled to recover for the pain and suffering, expense and loss of time which he necessarily would have undergone in having the operation. Considered in this light and in conjunction with the graphic description of the attending physician of the method which would have to be employed in order to restore the limb, the verdict assessed against appellant

would not be sufficient to reasonably compensate one for the pain, suffering and danger incident to such surgical operation to say nothing of that which he has already endured.

Verdicts ranging from fifteen hundred dollars to three thousand dollars for the partial loss of the use of an arm or leg, foot or hand, have been often sustained by this court as not excessive. A complete list of these cases would extend this opinion to unreasonable length. This court has frequently declined to reverse judgments for alleged excessiveness under facts much more favorable to the appellant than those in this case. It can not be insisted that this verdict of two thousand dollars "appears to have been given under the influence of passion or prejudice" when the extent of the injury and the agonizing pain which Boone has endured is considered. Twice has the verdict gone against appellant, although the first one was not as large as the second. This may be explained, however, upon the theory that at the second trial the permanency and exact nature and extent of the injury was made more definite and certain. The first judgment was reversed for error in the instructions and not for excessiveness of the verdict, and this error was cured upon the second trial. Viewed from any standpoint the verdict does not appear to be excessive.

Judgment affirmed.