MOSES FORD v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 11 December, 1935.)

1. **Master and Servant E b—Evidence of negligence and proximate cause held for jury in this action under Federal Employers' Liability Act.**

Plaintiff was employed in the operation of a ditching machine mounted on a flat car. The evidence favorable to plaintiff tended to show that as plaintiff was climbing on the flat car in the usual manner, with his foot

on the track on which the machine was mounted on the car, the engineer, defendant's *alter ego*, who could have seen plaintiff, pulled the lever moving the shovel without giving signal or warning, and that the machine, which had been held back by the shovel resting on the flat car, rolled down the inclined track and crushed plaintiff's foot. *Held:* The evidence was sufficient to be submitted to the jury on the issues of negligence and proximate cause under the Federal Employers' Liability Act.

2. **Trial D a—**

On motion to nonsuit, only the evidence favorable to plaintiff will be considered.

DEVIN, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Sinclair, J.,* at April Term, 1935, of NASH. Reversed.

This is an action for actionable negligence, brought by plaintiff against defendant, alleging damage. The defendant denied negligence and set up the plea of assumption of risk.

T. J. Truesdale was employed by defendant as the operator of a ditching machine or steam shovel, and had held such position for seven years. The shovel was mounted on a smaller wheel than the usual ones and on a flat car, which was on a sidetrack. The wheels under the steam shovel are eight-inch wheels, they rest on 100-pound rails which run up and down the flat car. Truesdale was loading dirt for repairing the road and was using the shovel to scoop up the dirt, putting it on flat cars along the main line track. The crane and shovel of the ditching machine were operated by means of levers which were pulled back and forth, to and from the operator or engineer. The plaintiff was working for the defendant firing the ditching engine. The plaintiff testified, in part:

"On 21 May, 1932, the ditching machine was up on top of this flat car and the wheels of the ditching machine were on the T-irons that were fastened on top of the flat-car. The ditching machine had a shovel which was operated out on the crane of the ditcher. The flat car was not on a level; it was on a hill. The machine was on the hill of the flat car and the shovel and crane were on the lower part. The machine when not in operation was resting on the end of the flat car. When the shovel was raised off of the flat car in the operation of the machine the machine would roll down because the shovel had been holding it. . . . I had breakfast and came back to the machine. Just as I got to the machine I peeped in the ash can and said, 'Mr. Truesdale, you reckon we better knock this grate?' At that time I was standing on the ground, the distance of that chair from him. He was on the machine ordering. I said, 'Mr. Truesdale, you reckon we better knock the ash pan?' He said, 'No, maybe we can get this load without raking the ash pan.' I

turned and walked to the north end of the flat car and crawled on and started to walking back and just as I got to the machine and placed my foot on the rail and reached up for the hand-hold he reversed the lever and picked up the bucket, which was the shovel. Whenever he picked up the shovel the machine rolled right down on my foot and I hollered to him. I said, 'Back up, you are on my foot.' I hollered and said, 'Hey, back the machine up, it is on my foot.' He looked around like that (indicating), and still moving the lever and the machine was still on my foot. I hollered and hailed him again and he looked around, and I hailed him again and he looked around. I hailed him three times. By that time he had sunk the shovel into the bank and by digging sideways, cater-cornered, that throwed the machine backward off of my foot. I jumped off of the car and sat there on the ground about a minute. It couldn't have been longer that I sat there and hailed him again and he looked. The locomotive fireman was the first one got to me and he looked after my foot and looked up at Mr. Truesdale and he cursed him. It was the wheel of the ditching machine that ran over my foot. . . . There was one step on the machine about three or four feet from the top of the flat car. This step, which was for me to step on, was up on the top of the floor of the machine. At the time when I went to mount the machine Mr. Truesdale was on it and was about four or five feet from me. *He could see me. There won't nothing to keep him from seeing me but some rods to hold the top on the machine, that was the only thing.* When the wheel of the machine rolled on my foot two of my toes, the big one and the one next to it, were cut off and my foot was busted wide open. I am not sure how long I stayed in the hospital but I think it was two months and thirteen days. It was my left foot that was run over. . . . From the time I asked him about the ash pan until the time I was hurt was no longer than it took me to walk from the south end of the flat coach to the north end and get up on the machine. I got up in the place where I usually got up and in the usual manner."

On motion of defendant, at the close of plaintiff's evidence and at the close of all the evidence, the court below rendered judgment as in case of nonsuit against plaintiff. C. S., 567. Plaintiff excepted and assigned error, made other exceptions and assignments of error, and appealed to the Supreme Court.

*Cooley & Bone for plaintiff.*
*Spruill & Spruill and Thos. W. Davis for defendant.*

PER CURIAM. The record discloses "It is agreed that this action comes under the Federal Employers' Liability Act."

Under the decisions of the Supreme Court of the United States, an employee in an action of this kind cannot recover for an injury unless there was negligence on the part of the employer, and that negligence was the proximate cause of the injury. In the present case, plaintiff was working under the engineer, who from the facts was the *alter ego* of defendant. Taking the evidence in the light most favorable to plaintiff, we think the questions of negligence and proximate cause were for the jury to determine.

Plaintiff's evidence is substantially as follows: The boiler which plaintiff was supposed to fire was on the ditching machine. When the plaintiff got to the north end of the ditching machine the shovel or bucket was still resting on the north end of the flat car, thereby preventing the wheels of the machine from rolling down the incline, and the engineer, who was on the machine but had not placed the same in operation, was four or five feet from the plaintiff and in a position where he could see the plaintiff. When the plaintiff got to the north end of the ditching machine he placed his foot on the rail, reached up for the hand-hold, and was in the act of getting upon the ditching machine when the engineer moved one of the levers so as to pick up the bucket or shovel, whereupon the wheels of the machine rolled northward on the rails and upon the plaintiff's foot, thereby crushing it. The plaintiff yelled at the engineer three times, but the latter did not pay any attention to him. He continued with the usual operation of the machine until the shovel was sunk into the bank of dirt, which caused the machine to roll backward off of the plaintiff's foot. The plaintiff then jumped off of the car to the ground, where he was discovered by the locomotive fireman before the engineer paid any attention to him. At the time when the plaintiff was injured he was mounting the ditching machine in the usual way. The engineer in charge of the ditching machine gave the plaintiff no signal, notice, or warning whatsoever that he was going to put the machine in operation. The plaintiff testified, "He could see me." *Cook v. Manufacturing Co.,* 182 N. C., 205; *S. c.,* 183 N. C., 48.

The defendant's evidence was to the contrary, but, on a motion to nonsuit, we consider only the evidence most favorable to plaintiff.

For the reasons given, the judgment below is

Reversed.

DEVIN, J., took no part in the consideration or decision of this case.