L. B. CALHOUN, ADMINISTRATOR OF THE ESTATE OF J. E. CALHOUN, DECEASED, v. NANTAHALA POWER & LIGHT COMPANY.

(Filed 11 October, 1939.)

**1. Trial § 22b—**

Upon a motion to nonsuit, the evidence is to be considered in the light most favorable for plaintiff.

**2. Trial § 24—**

If there is any substantial evidence supporting plaintiff's cause of action, defendant's motion for nonsuit is properly overruled.

**3. Appeal and Error § 21—**

Where the charge of the court is not in the record, it will be presumed that the court correctly instructed the jury on every phase of the case, both with respect to the law and evidence.

**4. Electricity § 7—Evidence held for jury on issue of negligence of power company in maintaining high voltage wires too near ground and in employing inexperienced workman to clear underbrush from beneath the wires.**

Plaintiff's evidence tended to show that defendant power company entered into a contract with her intestate under which he was to cut small trees and undergrowth beneath defendant's transmission lines, that the transmission lines carried an extremely high voltage, that they were strung fifteen feet from the ground, with expert testimony that lines carrying such voltage should have been maintained at a height not less than thirty feet from the ground according to the industry's customary and approved method, that intestate was a woodman without experience with electricity, that in performance of his contract he cut a tree which stood higher than the wires and that its top came into contact with the wires and caused intestate's death. *Held:* Even in the absence of affirmative testimony by plaintiff of defendant's failure to warn intestate, the evidence is sufficient to be submitted to the jury on the issue of whether defendant was negligent in maintaining the high voltage wires only fifteen feet from the ground and in employing an inexperienced person to perform the inherently dangerous work.

**5. Electricity § 6—**

In constructing and maintaining high voltage transmission lines a power company is required to exercise the utmost care and prudence consistent with the practical operation of its business, such care being only commensurate with the highly and inherently dangerous character of the instrumentality.

**6. Electricity § 10—**

Intestate contracted to clear small trees and underbrush from underneath defendant's transmission lines and was killed when he felled a tree which came into contact with high voltage wires. *Held:* The question of intestate's contributory negligence was a matter for the jury under appropriate instructions.

SEAWELL, J., concurring.

BARNHILL, J., dissenting.

APPEAL by defendant from *Nettles, J.,* at March Term, 1939, of SWAIN. No error.

Action for wrongful death of plaintiff's intestate alleged to have been caused by the negligence of the defendant in the maintenance of its electric power line. There was verdict for plaintiff on issues submitted, and from judgment on the verdict defendant appealed.

*Lee & Lee and Edwards & Leatherwood for plaintiff, appellee.*
*Black & Whitaker for defendant, appellant.*

DEVIN, J. The only assignment of error brought forward by defendant appellant is the denial of its motion for judgment of nonsuit entered at the close of plaintiff's evidence and renewed at the close of all the evidence.

It is well settled that upon this motion the evidence is to be considered in the most favorable light for the plaintiff, and that if there be any substantial evidence—more than a scintilla—to support the plaintiff's allegations the case must be submitted to the jury. Applying this rule to the evidence as shown by the record before us, we reach the conclusion that there was no error in submitting the case to the jury. There was no exception to the conduct of the trial. The judge's charge was not sent up; hence it must be presumed that the jury was properly instructed by the trial judge as to all phases of the case, both with respect to the law and the evidence.

The pertinent facts were these: Plaintiff's intestate, pursuant to contract with defendant, undertook to clear the right of way of defendant's power line of undergrowth, bushes and trees for a distance of six miles from the power house to Fontana mine. The written specifications for the work plaintiff's intestate was engaged to perform were as follows: "A trail 10 feet wide shall be cut continuously along and under the wires, along the center line of the transmission line. All perennial growth shall be cut within 6 inches of the ground. All brush shall be piled clear of the trail. In addition, any tree or bush that extends to within 10 feet of any wire of the transmission line shall be cut, and any tree or bush that extends within 10 feet of either wire of the telephone line shall be either trimmed or cut to provide at least 10 feet clearance to the telephone line. The brush shall be cleared from around all poles for a radius of at least four feet."

Defendant's power line over and along this right of way carried an electric current of 66,000 volts, and was suspended 12 to 15 feet above the ground—15 feet at the place of injury. The territory was mountainous and sloping. On the right of way had grown up a mass of bushes and small trees, some of the latter higher than the power lines.

9—216

A witness testified: "Trees or sprouts right where he (the deceased) was cutting were hanging over these high powered lines."

Plaintiff's intestate began work on the morning of 12 August, 1938, alone, and shortly thereafter was killed by an electric current transmitted through a small tree which when cut fell against the wires. The tree had stood four or five feet from the line of the wires, and was taller. The body of deceased was found in contact with the tree and badly burned by the powerful current. The deceased had had no experience with electric power lines or electric current.

Plaintiff alleged, among other things, that defendant was negligent in constructing and maintaining an electric power line carrying so powerful a current as 66,000 volts only 15 feet from the ground, and authorizing an inexperienced man to cut bushes and trees in close proximity thereto, and it was further alleged that no warning was given plaintiff's intestate. While the absence of warning does not affirmatively appear from plaintiff's evidence, however, considering the surrounding circumstances, the character of the growth on the right of way, the instruction to cut any tree that extended within 10 feet of any wire of the transmission line, the enormous voltage on uninsulated wires only 15 feet from the ground, we think a situation inherently dangerous for an inexperienced person was thereby created, and we are led to the conclusion that this afforded some evidence of failure on the part of defendant to measure up to its duty to exercise the degree of care required of those who undertake to handle and control a force so powerful and subtle as electricity. It was testified by two witnesses, found by the trial court to be experts in electrical construction, maintenance and repair, that according to the customary and approved method for the installation and maintenance of transmission lines, carrying a voltage as high as 66,000 volts, a height of not less than 30 feet from the ground should be maintained.

From the evidence adduced the inference is permissible that defendant in the exercise of due care should have foreseen that some of the trees to be cut, close to and higher than the wires, would come in contact with the wires, with dangerous consequences.

In *Helms v. Power Co.*, 192 N. C., 784, 136 S. E., 9, a recovery was upheld where electricity escaped from a power line to a telephone line over which it crossed, and caused the death of a lineman at work on the telephone line. In that case *Stacy, C. J.*, speaking for the Court, uses this language in stating the duty incumbent upon electric companies: "Electric companies are required to use reasonable care in the construction and maintenance of their lines and apparatus. The degree of care which will satisfy this requirement varies, of course, with the circumstances, but it must always be commensurate with the dangers

involved, and where the wires maintained by a company are designed to carry a strong and powerful current of electricity, the law imposes upon the company the duty of exercising the utmost care and prudence consistent with the practical operation of its business, to avoid injury to those likely to come in contact with its wires.· 9 R. C., 1200."

Various phrases descriptive of the degree of care required of those furnishing electric current or power are collected in the opinion in *Small v. Utilities Co.,* 200 N. C., 719, 158 S. E., 385; *Murphy v. Power Co.,* 196 N. C., 484, 146 S. E., 204; and *McAllister v. Pryor,* 187 N. C., 832, 123 S. E., 92.    18 Am. Jur., 445.

While the defendant's evidence tended to throw a different light on the circumstances and to exculpate it from the implication of negligence, this was a matter for the jury, and must be held to have been determined by the verdict.    Defendant further contends that its motion for nonsuit should have been sustained on the ground that plaintiff's evidence affirmatively established contributory negligence on the part of her intestate, but we cannot so hold.    This also was a matter for the jury under appropriate instructions by the trial judge.    *Cole v. Koonce,* 214 N. C., 188.

We find no error in the ruling of the court below in denying defendant's motion for judgment of nonsuit.

No error.

SEAWELL, J., concurring: The duty resting upon the master to warn a servant of danger under circumstances demanding it of a prudent man has a very prominent place in the law of master and servant, but it is by no means confined to that relation.    For illustration, it also arises under the relation of bailor and bailee, and it will not be questioned that the bailee is often an independent contractor.    No sound reason has ever been advanced why this duty should be confined to either of these relationships, or why it should be controlled by any other principle than that the one party, for his own or their mutual advantage, has, by some transaction, brought another into the zone of a danger, of which the first party has knowledge, either actual or imputed, and of which the other is ignorant.    Decisions of this Court and others affirm this broader statement of the principle.    *Stroud v. Transportation Co.,* 215 N. C., 726, and cases cited; *Cashwell v. Bottling Works,* 174 N. C., 324, 93 S. E., 901; *Heaven v. Pender,* 11 L. R., p. 503.

But I am writing in concurrence with the main opinion chiefly because it is challenged with respect to the manner in which the evidence is treated upon the motion to nonsuit, and its effect considered.    It is suggested that the case should have been nonsuited because an employee of the defendant and defendant's witness testified that he had given to

the plaintiff's intestate specific warning as to the danger out of which his injury and death came about. Thus, this Court is asked to pass upon defendant's evidence both as to the fact that the warning was given at all and as to its credibility and sufficiency. This is of importance because a strong inference arises under the circumstances that he met his death not from an act of negligence on his part—that would involve imprudent exposure to a known danger or a danger which he ought to know—but through ignorance to the danger itself. He was a woodsman, not an electrician. The jury may have inferred from the evidence that he was unaware of the vast electrical tension in the 66,000 volt current of electricity that traversed the wire in fifteen feet of the ground, its vast eagerness to escape through any convenient channel, and the quantity and destructiveness of the current which might be diverted through his body to the ground when the wire came in contact with a leaf or twig.

The sequence and interrelation of the rules governing this Court upon such a review are as interesting and instructive as the rules themselves.

Where there is any evidence, its weight is for the consideration of the jury, and the judge is without power to take it away from them. *Lassiter v. R. R.,* 171 N. C., 283, 88 S. E., 335; *Hill v. R. R.,* 195 N. C., 605, 143 S. E., 129; *Dickerson v. Reynolds,* 205 N. C., 770, 172 S. E., 402. Upon a motion to nonsuit, the evidence must be taken in the light most favorable to the plaintiff. *Smith v. Coach Line,* 191 N. C., 589, 132 S. E., 567; *Leonard v. Insurance Co.,* 212 N. C., 151, 157, 193 S. E., 166; *Neal v. R. R.,* 126 N. C., 634, 36 S. E., 117; *Gower v. Davidian,* 212 N. C., 172, 193 S. E., 28. Where there are discrepancies and contradictions in the evidence of plaintiff, if there is *any* favorable evidence, it is still a matter for the jury. *Gunn v. Taxi Co.,* 212 N. C., 540, 193 S. E., 747; *Matthews v. Cheatham,* 210 N. C., 592, 188 S. E., 87; *Mulford v. Hotel Co.,* 213 N. C., 603, 197 S. E., 169. Where there are such contradictions and discrepancies in the *testimony* of the plaintiff himself, a like rule prevails, leaving to the jury both its weight and credibility, where a part of the evidence is favorable. *Dozier v. Wood,* 208 N. C., 414, 181 S. E., 336; *Gunn v. Taxi Co., supra; Matthews v. Cheatham, supra; Mulford v. Hotel Co., supra.* The plaintiff is entitled to have the *whole* evidence marshaled—both that of the defendant and that of the plaintiff—and considered in its most favorable light to him, and is entitled to all its inferences and intendments which are favorable to him. *Lynn v. Silk Mills,* 208 N. C., 7, 179 S. E., 11; *Brunswick County v. Trust Co.,* 206 N. C., 127, 173 S. E., 327; *Gower v. Davidian, supra.*

Upon a motion to nonsuit, *only that evidence which is favorable to the plaintiff may be considered,* since the jury only has the prerogative of analyzing, accepting, or rejecting such parts of the evidence as it may

see fit. *Ford v. R. R.,* 209 N. C., 108, 182 S. E., 717; *Gower v. David-ian, supra; Hancock v. Wilson,* 211 N. C., 129, 189 S. E., 631. Only favorable aspects of defendant's evidence can be considered on a motion to nonsuit, and that which tends to defeat or contradict his claim cannot be considered. *Davidson v. Telegraph Co.,* 207 N. C., 790, 178 S. E., 603.

For my part, I have, at times, derived satisfaction and relief in re-flecting on the important and exclusive part that is given the jury in our system of judicature, and the fact that I am not permitted to assume their powers nor required to share their responsibilities, and need not suffer vicariously for their default.

Under the Constitution, I do not think that observance of these rules is optional with a court sitting to hear appeals on matters of law or legal inference.

BARNHILL, J., dissenting: Plaintiff's intestate entered into a written agreement to clear a certain portion of the right of way of the defend-ant's power line for a stipulated amount. The terms of this agreement constituted the deceased an independent contractor. The defendant was not under the same duty to warn him as it would have been under a contract of employment.

Conceding, however, that it was an act of negligence for the defendant to maintain its line with wires carrying voltage of 66,000 so near the ground, as this evidence indicates, and conceding further that it was the duty of the defendant to warn the plaintiff, who had represented himself as an experienced woodsman, it appears from the record that he was warned in detail of the dangers incident to the work. The defendant's electrical engineer testified that he advised deceased that "should he be given the contract, there were perhaps a few bushes that would probably hit the line if they were not cut properly, and we advised him to have at least one man with him at all times and we also advised him that should any bushes be larger than he thought he could handle, his helper ought to have a rope and rope it so it could not, under any condition, reach the line; and we told him we did not expect him to cut anything that would be at all dangerous, but we would prefer our linemen to do that and we would not deduct anything for that. Anything that ap-peared dangerous he would leave it. We told Mr. Calhoun at this time that the line was energized, that is, it had current on it; we told him there might be a few bushes that could hit the line and under no condi-tion should he allow anything, even small growth, to hit the line, that it might interfere with the operation of the line and might not be safe for him to allow it to do so. I told him we would not want to send him the contract unless he would promise to have at least one man to help

him, and at the same time I repeated what we told him previously—by all means he should have a helper with him at such time as he cut bushes that might touch the line and that all trees like that should be roped, and if he did find anything that wasn't safe to cut, that our linemen will take care of that and he should leave that alone. He agreed to that instruction." Henry Turpin testified that he heard the conversation and that Mr. Tompkins explained to the deceased that those lines would always be hot with 55,000 volts. This witness repeated in substance the instructions heretofore outlined. This witness further says Mr. Tompkins asked the deceased if he thoroughly understood the situation in regard to the danger to the line and property and to himself, and to do the work safely, and he just replied that he thoroughly understood what he was up against. "I talked with him and told him about the same thing Mr. Tompkins told him and warned him to make sure that he didn't let anything come in contact with the conductors regardless of how small it was and if there was any doubt to leave it alone; and if there was any doubt it might fall and touch the line if he did cut it to always tie it and let a man hold it while another one cut it." There was other evidence of warning.

The deceased disregarded these instructions and undertook to do the work alone without the assistance of a helper or rope. The tree which fell against the wire and killed the deceased was standing about 15 feet from the outside wire and the limbs extended to within 5 or 6 feet of the wire. If the deceased was an experienced woodsman, as he represented himself to be, then he knew how to fell a tree so as to make it fall in the desired direction. However, he undertook to fell this tree without taking the necessary precaution, without having a helper and without using a rope, in total disregard of the instructions he had received. Furthermore, it appears that the deceased signed the contract and then began work without returning it to the defendant and without giving it any notice that he had begun the work. Therefore, the defendant had no opportunity, after the contract was executed, to give deceased any further warning, or to ascertain whether he was taking the necessary precautions or to furnish any required supervision.

Under the circumstances, I am of the opinion that the negligent conduct of the deceased materially contributed to and was, as a matter of law, one of the proximate causes of his injury and death.

For the reasons stated, I am unable to concur in the majority opinion.