## Leadingham v. Hillman.

(Decided April 24, 1928.)

### Appeal from Boyd Circuit Court.

1. Physicians and Surgeons.—In action against physician for negligence in treating broken arm on account of doctor's taking off the splints prematurely, conflicting evidence as to condition of plaintiff's arm at time of removing splints made question for jury.
2. Physicians and Surgeons.—It is not as a matter of law the duty of a person, injured through malpractice, to submit to a serious surgical operation to effect a cure, but he is merely required to exercise his best judgment, and act as a reasonable person under the circumstances.
3. Physicians and Surgeons.—Physician is required to use such ordinary care, skill, and diligence as physicians and surgeons in the vicinity and in the same general line of practice ordinarily have and exercise in like cases.

4.  Physicians and Surgeons.—Patient, sustaining injuries in course of treatment, is under duty to use such care as man of ordinary prudence would use under like circumstances, and cannot recover against physician for any consequences of his own want of ordinary care.

5.  Physicians and Surgeons.—If defective condition of patient's arm resulted from negligence of physician in treating broken arm, patient's recovery was not defeated by his refusal to go to a hospital and have his arm rebroken and reset, notwithstanding physician's offer to pay him sum of money and expenses, but refusal merely prevented recovery to extent that damages were increased, if in exercise of ordinary care he should have complied with physician's request.

6.  Physicians and Surgeons.—In patient's action against physician for negligent treatment of broken arm, question whether patient's refusal to go to hospital and have arm rebroken and reset was negligence on his part, and, if so, extent to which damages were enhanced or increased by such refusal, held questions for jury.

WOODS, STEWART & SMOOT for appellant.

DYSARD & MILLER for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Reversing.

On November 25, 1925, W. H. Leadingham, while cranking a car, broke his right arm below the elbow, and went at once to Dr. H. J. Hillman to treat him. The doctor, after examining him, said: "You have a badly broken arm; both bones are broken." He then fixed up some splints, and, after getting the bones back in position, as he thought, tied the arm up with two splints. He did not tell Leadingham when to come back. In about three days his hand was swollen and hurt badly; he went back to the doctor. He took down the sling, and, after looking at the arm, told him to go home, and to come back in a week or something like that. In two or three days the swelling went down, and the splints got loose. Leadingham then went back to the doctor, and called his attention to the fact that the splints were loose, and asked him if he was going to tighten them, and he said: "No, that is probably all right so far."

About the middle of the next week, Leadingham went back again, and told the doctor the splints were getting awfully loose. He then got a little piece of cotton, and pushed it under the arm saying: "I think

that will hold it for a while all right, and if it don't, you ought to come back in about a week, and we will take one of the splints off and look at your arm." So he went back in about a week. The doctor then took one of the splints off, and said he wanted to keep the other one on for a week longer. This was at the end of the second week. At the end of the third week, the splint was loose, and the doctor took that off. He looked at the arm, and said, "Well, that looks like it has united; I will just leave it off; you can take your hand out of the sling." Leadingham then said: "Doctor, there is something wrong in the wrist." The doctor took hold of the arm, and gave it a pull and said: "Your knuckle may be sore; there is a knot. Give it time, it will finally get all right." After this Leadingham did not carry his arm in the sling any more, and the arm commenced dropping down, and was of little use. He then went back to see the doctor, showed him the arm, and he said that he would have to break it over again and set it, and said: "You have a bad arm and I hate it; it is my fault. Will you go to Huntingdon and have it broken over again and let it unite again?" He said he took the splints off too soon, and was afraid the arm would be crooked, and said: "If you will go there and have it broken again, I will pay your expenses at the hospital in Huntingdon." Leadingham did not go to the hospital, and brought this action against the doctor, charging negligence in the setting and treatment of his arm. The above were the facts as stated by him on the trial.

The defendant moved for a peremptory instruction. The court did not sustain the motion. The defendant then testified, and said in substance that he took the splint off the arm after five weeks. He said it should not have been taken off under four weeks. He admitted offering to pay the plaintiff $100 for his expenses if he would go to Huntingdon and have his arm broken and reset. The plaintiff testified to this also, and admitted that he did not go to Huntingdon or to any infirmary and have his arm broken.

On these facts, the court, at the conclusion of all the evidence, instructed the jury to find for the defendant. The plaintiff appeals.

There is no dispute in the evidence that the plaintiff's right arm is in such a condition as to be practically useless. He can only work with his left arm. The wrist

is not right, and the arm is crooked. Under the plaintiff's evidence, the doctor took off the splints at the end of the third week, and under all the evidence this was too soon. The splints should not have been taken off under four weeks at least. The condition of the arm and the proof that the splints were taken off too soon made out a case for the plaintiff. The conflict in the evidence presented a question for the jury. The ground upon which the peremptory instruction was given apparently was that the plaintiff had refused to go to a hospital and have his arm broken and reset. The rule on this subject is thus stated in 8 R. C. L. p. 448, sec. 18:

"It is not, as a matter of law, the duty of the injured person to submit to a serious surgical operation for the purpose of effecting a cure. He is only required to exercise his best judgment in the matter, and to do what a reasonable person would do under the circumstances."

This rule was approved by this court in Stewart Dry Goods Co. v. Boone, 180 Ky. 206, 202 S. W. 489. See, also, same effect in Whitson Lumber Co. v. Upchurch, 198 Ky. 127, 248 S. W. 243.

It was the duty of appellee in treating appellant to use such ordinary care, skill, and diligence as physicians and surgeons in the vicinity and in the same general line of practice ordinarily have and exercise in like cases. 21 R. C. L. p. 381. It was the duty of appellant to use such care as a man of ordinary prudence would ordinarily use under like circumstances, and, if he failed to do this, he cannot recover for any consequences of his own want of ordinary care.

"To constitute a bar to the suit, the negligence of the patient must have been an active and efficient contributing cause of the injury. In other words, contributory negligence to defeat right of action must be simultaneous and co-operating with the fault of the defendant, must have entered into the creation of the cause of action, and have been an element in the transaction which constituted it. Where the fault of the patient was subsequent to the fault of the physician, and merely aggravated the injury inflicted by the physician, it only affects the amount of the damages recovered by the patient." 21 R. C. L. 402, sec. 45.

If the defective condition of his arm made it necessary for appellant to go to a hospital and have the arm rebroken and reset and this was by reason of the neglect of appellee in treating his arm, and appellant had gone to the hospital and had the arm reset, he could have maintained his action to recover of appellee the damages he sustained by reason of appellee's negligence. His refusal to go to the hospital and have the arm rebroken and reset only prevented a recovery to the extent the damages were thereby enhanced or increased, if in the exercise of ordinary care he should have done this. These were questions for the jury.

Judgment reversed, and cause remanded for a new trial.