## OTHO GRAHAM GOWER v. DR. V. A. DAVIDIAN.

(Filed 13 October, 1937.)

**1. Physicians and Surgeons § 15c—Evidence held sufficient to overrule nonsuit on question of negligence of physician.**

The evidence tending to support plaintiff's cause of action tended to show that plaintiff was taken to a hospital after a serious injury, that defendant physician attended him, stated he was suffering from shock, and discharged him from the hospital some 36 hours later without making any clinical or X-ray examination, that thereafter plaintiff went to another hospital, where X-ray pictures disclosed dislocation of the fifth cervical vertebra, and other serious internal injuries. *Held:* The evidence is sufficient to be submitted to the jury on the question of defendant's negligence, since if plaintiff's condition was too serious for an immediate examination, defendant allowed him to be removed in such serious condition without an examination, while if such examination could have been made at once without risk, defendant failed to make the examination and discharged plaintiff while he was in a serious condition requiring immediate medical attention.

**2. Trial § 22b—**

On defendant's motion to nonsuit, only the evidence favorable to plaintiff will be considered.

**3. Physicians and Surgeons § 15c—Evidence held insufficient to show causal connection between injury and negligence of physician.**

Plaintiff's evidence was sufficient for the jury on the question of defendant physician's negligence in discharging plaintiff from a hospital with serious internal injuries requiring medical attention. Plaintiff's evidence tended to show that when his condition failed to improve, he went, in less than two weeks, to another hospital, where competent physicians attempted to set the fracture in the vertebra of his neck, that complete recovery was not had because the position of the fracture made it impossible to apply sufficient traction to reset the bone, that callus would develop after a period of over two weeks which would interfere with resetting the fracture, but there was no evidence that the delay of less than two weeks interfered with resetting the bone, or that ill effects resulted from such delay, although there was expert opinion evidence that plaintiff's chances for recovery would have been greater. *Held:* The rights of the parties cannot be determined upon chance, and plaintiff's evidence failed to show a causal connection between defendant's negligence and plaintiff's injury, and defendant's motion to nonsuit was properly granted.

APPEAL by plaintiff from *Spears, J.,* at February Term, 1937, of JOHNSTON. Affirmed.

This is a civil action instituted by plaintiff to recover damages caused by the negligent and wrongful conduct of defendant as his attending physician and surgeon. From a judgment of nonsuit entered at the conclusion of all of the evidence plaintiff appealed.

*Wellons & Wellons and Wellons & Pool for plaintiff, appellant.*
*Ehringhaus, Royall, Gosney & Smith, G. A. Martin, and Abell & Shepard for defendant, appellee.*

BARNHILL, J. On the night of 30 March, 1935, plaintiff, while operating a motor vehicle, drove off the road and wrecked his car. He received certain physical injuries and was carried to the hospital at Smithfield and was there attended by the defendant. He entered the hospital about 10:30 p.m., 30 March, and was discharged from the hospital about 11 o'clock the following Monday, approximately 36 hours after his admission. The evidence, considered in the light most favorable to the plaintiff, tends to show that at the time he was admitted to the hospital he was suffering from shock and concussion, and that there had been a dislocation of his fifth cervical vertebra, resulting in a compression friction of the sixth cervical vertebra and a fracture of the pedical lamina arches; that he was in a semiconscious condition at times; that he was partially paralyzed and that the defendant made only a casual examination as to his condition, stating that he was merely shaken up and shocked and would soon be all right; that during his stay

at the hospital the defendant never made any thorough clinical or X-ray examination of the plaintiff; that his condition was such as to give notice that he was suffering either from a fracture of the skull or of the spine; that on Monday morning the defendant permitted plaintiff's father to take the plaintiff from the hospital by mutual consent; that the defendant then gave the plaintiff's father instructions to take him home and put him to bed for eight or ten days and then try to get him up, and that if the whites of his eyes began to darken to let him know; that the relationship of physician and patient ended when the plaintiff was removed from the hospital. Thereafter, on 12 April, the plaintiff was taken to Duke Hospital and examination at this hospital disclosed the condition of plaintiff's neck. At that time his attending physician undertook by traction to reset the bone and later immobilized his neck. Due to the condition and location of his injury, it was impossible to apply sufficient traction to reset the bone, and plaintiff is now suffering from a permanent injury.

To entitle the plaintiff to have his cause submitted to a jury, he must offer evidence tending to show that he was injured, that the defendant was negligent in the manner in which he examined and treated the plaintiff, or in his failure to render proper treatment, and that the negligent conduct of the defendant was the proximate cause of injury sustained by him. There is no evidence that defendant did not possess the necessary skill and ability.

The medical experts who testified seemed to be in accord in their opinion that it is risky to subject a patient to a clinical and X-ray examination when he is under severe shock, and that the attending physician must exercise his best judgment in determining when it is safe to make such examination. If the plaintiff was in such condition when he was admitted to defendant's hospital as to cause the defendant to conclude in the exercise of his judgment that it was risky to proceed with a thorough clinical and X-ray examination of the plaintiff, then it appears that notwithstanding plaintiff's serious condition he permitted the plaintiff to be removed from the hospital without ever having made any examination, which would disclose the serious injuries existing. If the plaintiff was not in such a state of shock as would make it risky for the defendant to proceed with a proper examination, then it appears from plaintiff's testimony that he carelessly and negligently failed to proceed with the examination, but, on the contrary, permitted the plaintiff to be removed from the hospital without having first discovered his condition and without taking any steps to immobilize his neck or to reset the fracture. It would seem, then, that the conclusion that the plaintiff offered sufficient evidence to be submitted to the jury on the question of defendant's negligence is inescapable, and that the judgment of nonsuit

cannot be sustained on that ground. In this connection it may be well to say that the defendant offered evidence sharply contradicting the testimony of the plaintiff and tending to show that he exercised reasonable care and diligence, but we now view the evidence only in the aspect most favorable to the plaintiff.

But the burden rested upon the plaintiff to offer evidence tending to show a causal connection between his injury and the negligent conduct of the defendant.

Thereafter, on 12 April, 1935, the plaintiff, not having shown any evidence of improvement, was taken to Duke Hospital, and the condition of his neck was discovered and efforts were made to reset the fracture. All the evidence tends to show that callus does not develop to an extent that would interfere with the resetting of a fracture within a minimum of two weeks, and that there was no evidence of callus around the fracture of plaintiff's neck which would impede or interfere with the resetting of the bone. While Dr. William Spicer testified that he examined X-rays and discovered callus formation, the record discloses that he was referring to X-rays made at his instance approximately 22 months after plaintiff's injury was sustained. No witness testified that plaintiff's condition was aggravated by the delay in efforts to reset the bone, or that the inability of the surgeons to reset the bone was due to any condition arising from the delay. The evidence most nearly approximating a statement to this effect is the testimony of Dr. Spicer, when he said: "I think his chances at recovery would have been much greater because it would have been much easier to reduce dislocation and fracture at the time of the accident than it would *now* this callus formation or new bone has formed, because that holds them tight, fixed like a brace. . . . I stated that had that fracture and dislocation been replaced, put in proper position immediately, it would have been much easier, but to wait until after two weeks it would be almost impossible to replace it, owing to callus which had been thrown out. . . . It is my opinion that had this case received immediate attention and had that fracture and dislocation reduced, his chances for further recovery, or for perfect recovery, would have been much greater." Analyzing this statement, it is found to be entirely conditional. Dr. Spicer states that chances at recovery would have been much greater because it would have been much easier to reduce the location and fracture at the time of the accident than it would *now this callus formation or new bone has formed.* In referring to the callus formation he was speaking of a period 22 months subsequent to the injury. He further states that had that fracture and dislocation been replaced, put in proper position immediately, it would have been much easier, but to wait until after two weeks

it would be almost impossible to replace it owing to callus, which had been thrown out. He does not state that the fracture could have been replaced, and the evidence shows that they did not wait *until after two weeks, or until callus had been thrown out.* He further gave as his opinion that had this case received immediate attention *and had that fracture and dislocation reduced,* his chances for recovery, or for perfect recovery, would have been much greater. His opinion in this respect is based entirely upon an actual reduction of the fracture, which the evidence discloses could not be reduced, and he merely says that the chances for further recovery would have been much greater. The rights of the parties cannot be determined upon chance.

This evidence must likewise be viewed in the light of the fact that this witness further testified that an effort to reset should be made within two weeks, and that all the testimony shows that an effort was actually made by competent physicians to reset the fracture within the two weeks, and that the witness merely says that the chances would have been greater, but does not testify as to any ill effects which resulted, and the efforts to reset the fracture were made within the time he specifies as essential.

The evidence discloses that the use of modern equipment and methods by trained and skillful surgeons at a time when callus had not developed sufficiently to interfere with proper setting of the bone has availed nothing. The character and location of the fracture is such that proper traction cannot be successfully used. Unfortunately, upon this record as it now appears, the plaintiff has suffered an injury that could not then and cannot now be relieved by the medical profession, except by performing a most dangerous operation. There is no evidence of any injury which the plaintiff sustained by reason of the delay of less than two weeks caused by the alleged conduct of the defendant. In so far as plaintiff's right to recover is concerned, what boots it that the defendant did not make a thorough clinical and X-ray examination? Plaintiff's unfortunate condition results from his own act and not from any negligent conduct of the defendant.

Plaintiff having failed to offer evidence tending to show that he suffered any injury which was proximately caused by the alleged negligent and wrongful conduct of the defendant, the judgment as of nonsuit must be

Affirmed.