E. M. Grubbs v. James K. McShane

198 So. 208
Division A
Opinion Filed October 15, 1940
Rehearing Denied November 6, 1940

*Hendricks & Hendricks,* for Plaintiff in Error;

*McKay, Dixon & DeJarnette,* for Defendant in Error.

Thomas, J.—In this case the plaintiff-in-error insists that the evidence established the negligence of the defendant-in-error, defendant in the trial court, and that the judge usurped the prerogatives of the jury when he instructed a verdict in favor of the defendant at the close of all the testimony, after having denied a similar motion when the plaintiff had rested.

We will dispose of the controverted points in that order.

The alleged injury for which the plaintiff attempted to prove the defendant responsible grew out of the treatment by the latter of a condition described as phlebitis, or commonly known, in the vernacular, as "milkleg."

As a preface to our summary of the facts developed by the plaintiff and the law applicable to them, we detail the negative statements of the plaintiff-in-error, by his counsel, that the issues may be narrowed to the ones necessary to be answered to determine this litigation.

It is said by him that no criticism is offered of the use of heat in the treatment of phlebitis; that there was no error in the diagnosis; that no negligence because of unsuccessful treatment is claimed. Further, no contention is made that liability is predicated on the "skill that he (defendant) possesses" but did not use.

The positive position of the plaintiff-in-error is that the manner of applying the treatment was negligent, or to quote his brief "it is simply a question of fact from the evidence * * * to determine whether or not such treatment is the usual and customary treatment by physicians and surgeons in the same locality treating the same kind of disease."

The plaintiff was stricken with appendicitis and an appendectomy was performed on him, which required his remaining abed for fifteen days. Soon afterward he suffered a very severe pain in the lower part of the left leg, and in an effort to alleviate it, a liniment was applied. The defendant, a practicing physician, was summoned and when he arrived, was told of the use of the liniment. He diagnosed the cause of the pain as phlebitis, and advised the application of heat to the affected area. Following out his instructions, a cradle was constructed from barrel staves sawed in half, to which two forty- and one fifty-watt electric light bulbs were attached, and the cradle was placed over the injured leg, and covered with a blanket to retain the heat of the lighted bulbs, which were distant from the leg six or seven inches. The physician directed that an icepack be fixed over- the- groin, and that the foot should be elevated and the patient kept quiet. From time to time hypodermic injections were given

to relieve the pain. Before the cradle was constructed, the doctor left the patient and did not call upon him again until the following day. Meanwhile, the heat was continuously applied. On the physician's return he approved the apparatus, and discovered that a water blister of considerable size had formed on the leg between the ankle and thigh. The patient complained of discomfort and asked that the cradle be removed, which he was told could not be done because it was necessary to a proper treatment of the disease, and he was also informed that the water could not be drained from the blister. In accordance with the instructions, the lights remained burning continuously for about three days, and then three bulbs of fifteen watts each were substituted for the original ones. The cradle then remained for eighteen days and was removed. At the expiration of that time, the blister burst. Subsequently, ulcers formed in the affected area of the leg.

Phlebitis is a condition which not infrequently results from operations, and in spite of the care taken by the surgeon, it is unpredictable and unpreventable, and simply means that a blood vessel has become obstructed or "occluded by virtue of a clot known as a thrombus," to quote an expert witness introduced by the plaintiff. This condition is indicated by swelling in the infected area, pain and oft times discoloration. Phlebitis sometimes causes blisters on the surface of the skin without the application of heat, and it is quite common for it to develop sores or ulcers. . :

The factual situation which we have summarized in the preceding paragraphs was evolved at the trial by the expert witnesses of the plaintiff, and from it we glean that those who testified in his behalf believed the plaintiff's condition to have been a typical case of phlebitis, and to have received the treatment generally administered by them and others, that is, the application of heat to the diseased region.

Bearing in mind what we said at the outset about the charge of the plaintiff that the manner of the use of this remedy by the defendant was such as to show negligence on his part, we now examine more closely what those witnesses had to say about the treatment *as* it was utilized. It was stated that the disability of the plaintiff was at the time of the trial traceable mainly to the thrombus, and that the scarification was a "cosmetic factor more than anything else," and that although not the usual thing, an intensive case of phlebitis would cause not only blisters, but destruction of tissue "to the point of gangrene" without any application of heat. It was said that heat applications were frequently given by a homemade contrivance, without thermometer or means of adjustment, such as the one introduced in evidence in this case. One of the witnesses for the plaintiff was asked if he, in his treatment of such condition following abdominal operations, had ever advised an electric cradle and left the installation of it to the patient, or to laymen, and in response he stated that he had done so frequently. He likewise testified that it was customary to advise the use of a device such as was employed by the defendant, and to go away and leave it to a layman to follow the instructions given.

There is no doubt that the plaintiff suffered great pain from the treatment which was resorted to in the attempt to cure him, as well as from the ulcers which developed after the heat appliance had been removed, nor is there any doubt that he suffered financial loss from his inability, because of that condition, to follow his daily labors, but the fact that a blister did result while the treatment was being used and that ulcers later appeared on his diseased leg did not of themselves establish negligence on the part of the defendant, for the doctrine of *res ipsa loquitur* does not apply.

Foster v. Thornton, 113 Fla. 600, 152 So. 667; 125 Fla. 699, 170 So. 459.

We think that the evidence introduced by the plaintiff falls far short of proving the negligence alleged in the declaration. That the defendant was seriously ill was made clear. It was also well proven that he suffered intensely as a result of the remedy used in treating that illness, however, the member of his body which was so badly affected was saved. There was no sufficient testimony that his physical condition after the ordeal was traceable to aught but the severe phlebitis which followed the operation. By his witnesses it was established, in our opinion, that the proper remedy was used properly, and that the plaintiff failed in his undertaking to fix upon the defendant the responsibility for the injury he endured.

Feeling thus, we think that the trial judge would have been correct had he granted the motion for an instructed verdict at the conclusion of the plaintiff's testimony, and there was no reversible error when he deferred that action until he had heard the defendant relate his version of the experience.

No reversible error appears, so the judgment of the lower court is—

Affirmed.

TERRELL, C. J., and BUFORD, J., concur.

WHITFIELD, J., concurs in opinion and judgment.

Justices CHAPMAN and BROWN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.