ETHNA HUDSON, joined by her husband, Milton I. Hudson, DR. ARTHUR H. WEILAND and CHARLES H. DYER.

8 So. (2nd) 37                                    En Banc

May 8, 1942                    Rehearing Denied June 4, 1942

Carson, Petteway & Roman, and Stafford Caldwell, for plaintiffs in error.

Blackwell & Walker, for defendants in error.

THOMAS, J.:

This case reaches us by appeal from final judgment for the defendants entered upon their demurrer to the second amended first count of plaintiff's second amended declaration.

Inasmuch as determination of the controversy depends upon the sufficiency of this pleading we will, at

the outset, give an analysis of its allegations. Defendant Weiland is a physician; defendant Dyer the operator of a device for administering artificial heat by causing electricity to course through the body. Plaintiff's left hand and arm had become injured and the defendant physician recommended that the treatment administered by the defendant diathermist be given continuously for a period of twenty minutes. She followed the advice and the electricity was applied by the latter in the presence of the former, both of them consulting with each other during the process. Injury resulting from the application was painful and permanent.

It was charged that there was a joint duty on the part of these two men "to see that said diathermic treatment was properly administered and that the machine was properly operated and that the treatment was suspended and terminated at the proper time so as to prevent injury." It was asserted that they failed in this obligation and "carelessly and negligently caused an electrical current of an amperage specified and directed by [the physician] to pass from said machine through plaintiff's said left arm and hand for said period of twenty (20) minutes, although the said [physician] and [diathermist] knew, at the expiration of twenty minutes that the treatment was inflicting severe pain upon the arm and hand of the plaintiff . . ." It was iterated that the electrical current was "negligently applied . . . under the negligent and careless personal supervision and direction of the said [physician] . . .," and that the treatment lasted continuously for twenty minutes notwithstanding the remonstrances on the part of the plaintiff that it was causing her great pain. Some-

time after the first experience a repetition was advised by the physician, whereupon the application of electricity of the same intensity and duration was renewed. The allegations of the declaration with reference to that ministration are substantially the same as those describing the first one.

Thus, it will be seen that each of the defendants acted within a definite sphere. It was the physician's responsibility to advise such treatment as is generally accepted by the profession as the one most likely to cure or relieve the particular injury from which the patient was suffering when she consulted him. Grubbs v. McShane, 144 Fla. 585, 198 So. 208. It was the part of the other defendant to apply the heat of a strength and duration designated by the physician. His duty was expertly to follow the instructions given. We do not understand that there is any claim that the remedy itself, that is, the application of electrical current, proposed by the physician was improper for one in her condition, or that there was failure on the part of the diathermist to follow the prescription; nor is there any charge that the machine was defective. The substance of the allegations is that the intensity of the heat, the duration of the treatment and the repetition of it constituted negligence resulting in injury. There is not only insufficient averment of facts indicating "unity of design" or "violation of . . . joint duty." This is far from showing that there was a joint tortious act on the part of the defendant or concert of action between them.

It is the position of the plaintiffs in error that the allegations of the declaration abundantly show the characteristics of joint-tort-feasorship and in support of it they cite, among other cases, our decision in

Louisville & N. R. Co. v. Allen, 67 Fla. 257, 65 So. 8, and Feinstone v. Allison Hospital Inc., 106 Fla. 302, 143 So. 251.

The gist of these decisions is that if acts of negligence, although distinct in themselves, concur in producing an injury the liability is joint and several. The first impression is that the rule announced applies to the facts in the present case but from our examination of the briefs and the cited authorities and the opinions discovered in our own research we have met great difficulty in attempting to draw the line of demarcation between those cases in which the wrong-doers are, and those where they are not, joint tort-feasors. We are led by the experience to the view that the question whether two or more persons are actually joint wrongdoers is one of fact dependent upon the circumstances of the particular case. It is not the first time that this difficulty has been met by this court. In Louisville & N. R. Co. v. Allen, supra, Mr. Justice Shackleford observed that it "would be a difficult task, if not one impossible of performance" to give a definition of joint-tortfeasors that would fit all cases. We have referred to Colley on Torts, Fourth Edition, Volume 1, page 276, and have found there the statement that "no comprehensive general rule can be formulated which will harmonize all the authorities." This eminent authority then pointed out that where there is a common duty and by a common neglect of that duty such other person is injured, then there is a joint tort with joint and several liability." As we have already said the declaration in this case fails to show facts constituting either a joint duty or a common neglect. According to this authority the cases are in disagreement beyond that point, but the weight of authority supports the view

"that, where the negligences of two or more persons *concur* in producing a single, indivisible injury, then such persons are jointly and severally liable, although there was no common duty, common design or concerted action." (Italics supplied). This seems to be the principle adopted in our own decisions. For instance, in Feinstone v. Allison Hospital, Inc., supra, Mr. Justice Davis wrote: "The rule is well settled that if two or more wrongdoers negligently contribute to the personal injury of another by their several acts, *which operate concurrently* . . . they are jointly and severally liable." (The italics there appeared in the opinion). It seems to us that emphasis, therefore, must be placed, where there is a lack of unity of design or common duty, upon the concurrence of the alleged wrongdoing. Having concluded that there is a failure of the pleader to show community of design or a common duty we have searched for allegations that wrongdoing on the part of the physician and the diathermist coincided to produce the injury. Indulging the presumption against the pleader, as we must, we are utterly unable to discern in the pleading allegations which if proven would establish that there was negligence on the part of the physician in his field and upon the diathermist in his which concurred in the eventual injury. In this view we are not influenced by the charge that the physician was present at the time of the treatment. Nelson v. Sandell, 202 Iowa 109, 209 N. W. 440, 46 A. L. R. 1447.

Because of the views we have expressed it is our conclusion that the circuit judge acted correctly in entering the judgment upon the demurrer and it is therefore—

Affirmed.

RBOWN, C. J., TERRELL, BUFORD and ADAMS, JJ., concur.

WHITFIELD, and CHAPMAN, JJ., dissent.

CHAPMAN, J., dissenting:

Pertinent allegations of the challenged declaration are viz:

". . . That the said Charles H. Dyer held himself out as an expert in the operation of said machine and in the administration of said electrical treatments for medical purposes. That the defendant, Dr. Arthur Weiland, well knew the said Charles H. Dyer and his qualifications and the nature of the machine operated by him and the purposes for which same was used and had easy access to the room in which said machine was operated and full opportunity to inspect said machine and the operation thereof in connection with the treatment of the plaintiff, as hereinafter alleged, by the said Dr. Arthur H. Weiland, and had full opportunity to see that said machine was in proper condition and properly operated.

"That on or about, to-wit, the 18th day of August, 1933, plaintiff employed the defendant, Arthur H. Weiland, as her physician to treat her for injuries which she had received to her left arm and hand, and in the course of said employment and on or about November 1, 1933, said Weiland prescribed for plaintiff diathermic treatments of the nature and duration hereinafter described, and directed the plaintiff to submit to diathermic treatments to be administered for a period of, to-wit, twenty minutes by the said Charles H. Dyer, using the said electrical appliance heretofore described.

". . . That the first treatment which was given by the said Charles H. Dyer to the plaintiff herein was administered in the immediate vicinity and presence of the said Arthur H. Weiland, who supervised and directed the administration of said diathermic treatment and advised with the said Charles H. Dyer as to the manner in which said treatment should be administered. . . .

"That said electrical machine when improperly handled is a highly dangerous instrument and unless carefully and intelligently handled by an experienced and careful operator is capable of seriously burning the human tissues through which the current is passed, and capable of causing grievous bodily harm to the person submitting to such treatment, all of which was, or with the exercise of ordinary care, should have been well known to the defendants herein.

"That in administering said first treatment prescribed by the said Weiland, as aforesaid, the said Dyer and the said Weiland negligently acted with a unity of design and in violation of the joint duty imposed upon them. That the said Dyer negligently applied said diathermic treatment under the negligent and careless personal supervision and direction of the said Weiland and operated said electrical machine so unskillfully, carelessly and negligently that long before the conclusion of said treatment the electric current of the strength, destiny and duration prescribed and directed by said Arthur H. Weiland, which plaintiff alleges was too powerful and too long continued, began seriously and injuriously to affect and burn the left arm and hand of plaintiff, and began to cause plaintiff intense pain. That during the

course thereof plaintiff repeatedly informed said Weiland and said Dyer that said treatment was causing her intense pain, but said defendants carelessly and negligently ignored the complaints made by the plaintiff. . . .

"That after the conclusion of said treatment plaintiff complained to said defendants of the intense pain which said treatment had caused, and stated to the defendants that said electric current had burned a portion of said arm and wrist, and exhibited said burn to defendants.

"That defendants knew, or by the exercise of reasonable care should have known from these facts, to-wit, said intense pain and burning and the bitter complaints of the plaintiff, that said electric current thus passed into plaintiff's hand and arm, as aforesaid, was too powerful and too long continued and likely to inflict permanent injury upon the plaintiff.

It is alleged that with full knowledge of the burns and the painful effects of the first treatment, the second treatment was for twenty minutes' duration and of the same electrical strength and intensity as the first.

". . . That said treatment was so carelessly, unskillfully and negligently prescribed and administered that shortly after it began plaintiff began to suffer excruciating pain, and thereafter plaintiff immediately informed said Dyer, who was then and there acting as administrative agent for the said Weiland under a unity of design and purpose as aforesaid, that plaintiff was suffering intense pain and agony and that the electric current was burning her, and begged the said Dyer to discontinue said treatment, but said Dyer,

acting in the capacity aforesaid and under the negligent prescription and direction of the said Weiland and in pursuance of said unity of purpose, after he knew that the second treatment was inflicting intense pain and was burning the plaintiff, negligently refused to desist and negligently refused to cut off the current or to modify the same, . . .

"That as a proximate cause and a direct result of said treatments which were carelessly and negligently prescribed and administered, as aforesaid, plaintiff's left arm and hand were seriously burned by said electric current, and plaintiff was subjected to the most excruciating pain and agony, which continued during said treatment and for a long time thereafter; that by reason of said burning the tissues of said hand and arm were seriously injured and said tissues were in fact burned and destroyed; that it became necessary, as direct result of said negligent burning, to amputate the thumb and little finger of said hand, and which said thumb and little finger of said hand were thereafter amputated, and said hand, on account of said burning and amputation, has become a disfigured and unsightly member; that the said injuries are permanent and plaintiff will be compelled to go through life with a disabled and disfigured hand and arm and be compelled thereby to suffer continued physical pain and mental anguish. . . .

"Plaintiff further alleges that the proximate cause of the injuries received by the plaintiff herein was the concurrent negligence of the defendants above named. That the said Weiland was negligent in directing said first treatment, as aforesaid, without seeing that the plaintiff was protected from injury and burns, in the event said treatment should prove too severe, and

without seeing that the electric current was cut off or modified when the plaintiff complained of intense pain and burning, and that the defendant, Weiland, was furthermore guilty of negligence by prescribing the second treatment to be administered by the same agency for the same length of time and with the same strength of current, notwithstanding that the said Weiland had full knowledge of the fact that the first treatment had caused the plaintiff herein to suffer considerable pain and some burning, and by permitting and directing the said Charles H. Dyer, as the administrative agency delegated by the said Weiland, to repeat said treatment without the said Weiland being personally present to supervise said treatment and to stop or modify the application of the electric current when it became apparent that the plaintiff was suffering severe pain and probably severe burns. That the said Dyer knew, or should have known, that the administration of the second electric treatment for the time and in the manner prescribed by the said Weiland, was injuriously affecting the plaintiff herein, and the said Dyer was negligent in carelessly and skillfully applying the electric current prescribed by the said Weiland, as aforesaid, and in continuing said treatment after plaintiff had advised him that said treatment was causing her intense pain and suffering, and after she had put him upon notice that the electric current was burning her, and after her pain and suffering was clearly demonstrated to the said Dyer by the plaintiff's cries and protests. That the negligence of the two defendants aforesaid, manifested in the manner aforesaid, was concurrent and such concurrent negligence was the proximate cause of the

severe injuries sustained by the plaintiff, as hereinabove alleged."

It has been settled law of Florida for a period of fifty years or more that a declaration for negligent injuries should set forth the ultimate facts showing the relation of the parties and the circumstances out of which the duty to avoid the negligence arose and the act or omission that was the proximate cause of the injury. The facts should be clearly stated so that the duty may plainly appear. See: Coombs v. Rice, 64 Fla. 202, 59 So. 598; Co-operative Sanitary Baking Co. Shields, 71 Fla. 110, 70 So. 934; Ingram-Dekle Lbr. Co. v. Geiger, 71 Fla. 390, 71 So. 552; Ann. Cas. 1918A 971; Warfield v. Hepburn, 62 Fla. 409, 57 So. 618; 20 R. C. L. 10; Christopher Co. v. Russell, 63 Fla. 191, 58 So. 45, Ann. Cas. 1913C 564; Peters v. City of Tampa, 115 Fla. 666, 155 So. 854; Williams v. City of Jacksonville, 118 Fla. 671, 160 So. 15; Coaster Amusement Co. v. Smith, 141 Fla. 845, 194 So. 336; Atlantic Peninsular Holding Co. v. Oenbrink, 133 Fla. 325, 182 So. 812.

It is not necessary for a declaration to set out specific facts constituting negligence, but an allegation of sufficient acts or omissions causing injury, coupled with an averment that they were negligently done or omitted, is sufficient. See American District Electric Protective Co. v. Seaboard Air Line Ry. Co. 129 Fla. 518, 177 So. 294; Kneeland v. Tampa Northern R. Co., 94 Fla. 702, 116 So. 48; McLeod Construction Co. v. Cooper, 101 Fla. 441, 134 So. 234; Duval v. Hunt, 34 Fla. 85, 15 So. 876; Atlantic Coast Line R. Co. v. Beazley, 54 Fla. 311, 45 So. 761; Seaboard Air Line Ry. Co. v. Good, 79 Fla. 589, 84 So. 733; Woodcock

v. Wilcox 98 Fla. 14, 122 So. 789; Triay v. Seals, 92 Fla. 310, 109 So. 427.

The case of Foster v. Thornton, 125 Fla. 699, 170 So. 459, was a malpractice case. Mrs. Thornton suffered for many years with migraine headaches and went to Dr. Thornton, a chiropractor, for treatment. She was treated each day for four or five days and on the fifth day while being treated she was seized with severe pains in the head and neck where the chiropractor was rubbing her. She was carried home in an ambulance and died two weeks afterwards of a broken neck. This Court upheld a verdict for the plaintiff husband against the chiropractor and in so doing, in part, said:

"In the decision dated August 10, 1933, we held in effect that in an action for damages resulting from an injury caused by negligent treatment of a patient by a doctor, the doctrine of *res ipsa loquitur* does not apply, that when applied to for treatment the doctor must determine at his peril whether or not the ailment complained of may be properly treated and the method to be followed in the treatment, but that error, unskillfulness, or negligence in diagnosis or treatment will not be proven by the fact that the patient continues to suffer, grows worse, or dies, because if this were the case doctors would be warrantors of cures.

"We also held that negligence in a case like this might be inferred from circumstances proven, but that when circumstancial evidence is relied on to establish negligence on the part of the physician or surgeon in the administration of treatment to a patient whom the physician or surgeon has decided should be subjected to the particular treatment ad-

ministered, the circumstances should raise a fair presumption of negligence.

"The ultimate question with which we are confronted here is whether or not the jury were warranted in assuming that the defendant applied undue force and failed to exercise the degree of care required by chiropractic standards in treating Mrs. Thornton."

It is alleged that the electrical machine was a highly dangerous instrument, known to be such by the defendants, and was carelessly, negligently and unskillfully prescribed by the physician and administered by the diathermist, and that the proximate cause of plaintiff's injuries was concurrent acts of the defendants.

The case of Saunders v. Lischkoff, 137 Fla. 826, 188 So. 815, was a malpractice case. The defendant physician was an ear, eye and throat specialist. Plaintiff had trouble with his left eye and it was diagnosed as "plastic iritis" and an application of atropine was the approved remedy or treatment. A close check of the patient is required by the physician when this remedy is being used. The physician failed to make the standard check and the patient lost his vision and charged the physician with negligent treatment. The declaration was sustained when we adopted the rule expressed in 48 Corpus Juris, par. 113, p. 1125-6, viz:

"(113) 4. Wrong Diagnosis. The patient is entitled to an ordinarily careful and thorough examination, such as the circumstances, the condition of the patient and the physician's opportunities for examination will permit, and while he does not insure the correctness of his diagnosis, a physician or surgeon is required to use reasonable skill and care in

determining through diagnosis the condition of the patient and the nature of his ailment, and is liable for a failure, due to a want of the requisite skill or care, to diagnose correctly the nature of the ailment, with resulting injury or detriment to the patient. So, too, it has been held that if a physician, by the exercise of reasonable care and skill, ought to discover that an ailment is incurable, that it will not yield to usual treatment, and that the patient will not be benefitted, and fails to make such discovery and advise the patient thereof, he is guilty of negligence. The fact that information and not medical treatment was sought does not excuse negligence in making the diagnosis. On the other hand, a physician or surgeon is not responsible for a mistake in diagnosis if he uses the proper degree of skill and care. . . ."

The gravamen of the action here is the alleged unskillful, careless and negligent prescription of treatment by the defendant physician and the alleged unskillful, careless and negligent administration of the prescribed treatment by the diathermist, and that the negligence of the two caused plaintiff's injuries.

The case of Gower v. Davidian, 212 N. C. 172, 193 S. E. 28, was a suit against a physician for wrongful and negligent treatment. The plaintiff had sustained an injury in an automobile collision and was given emergency treatment by the defendant physician. The plaintiff was in a semi-conscious condition when treated by the defendant and was partially paralyzed, and the defendant physician was held negligent in not making a careful examination of the patient, inclusive of an X-ray examination. It was determined that the plaintiff, some twelve days after the collision, had broken bones and it was then *too late* to reset the

broken bones and the plaintiff was permanently injured. The court enunciated the following principle of law as applicable to the issues presented, viz:

"To entitle the plaintiff to have his cause submitted to a jury he must offer evidence tending to show that he was injured, that the defendant was negligent in the manner in which he examined and treated the defendant, or in his failure to render proper treatment, and that the negligent conduct of the defendant was the proximate cause of injury sustained by him. There is no evidence that defendant did not possess the necessary skill and ability."

The rule *supra* was adopted by the Supreme Court of Alabama in Peck v. Henderson, 22 Ala. 541, 118 So. 258 and 262. The defendant physician was employed to remove a cotton seed from the ear of plaintiff's child and to treat him. The physician attempted the removal of the cotton seed with rusty and discarded forceps. The forceps were "so rusty you could scrape it off with a knife." The child was placed on a table and chloroform administered. The physician made no effort to sterilize the forceps. The forceps were inserted in the patient's ear and when withdrawn they were covered with blood and had at the tip end a small piece of "meat" and a severe hemorrhage followed. The child died a few days thereafter and a verdict was sustained by the court. The court sustained the charge to the jury viz:

" 'No matter how much skill Dr. Peck may have possessed, yet if he so negligently or unskillfully undertook to remove the cotton seed, or if he negligently or unskillfully treated or omitted to treat the ear, and such negligence or unskillfulness proximately

contributed to the child's death, then Dr. Peck is liable.' "

The Supreme Court of Kentucky enunciated the rule, *supra,* in Powell v. Galloway, 229 Ky. 37, 16 S. W. (2nd) 489, wherein the plaintiff broke one of the bones in his right forearm while cranking an automobile. Dr. Powell accepted employment and undertook to render the necessary proper service and treatment. It was charged that the physician was negligent in the treatment and handling of the injury and as a direct result of his negligence in the treatment plaintiff's hand and fingers were stiff, deformed and permanently injured. There was a verdict and judgment for the plaintiff and the same were upheld by the Court of Appeals of Kentucky when the Court, in part, said:

"It is correctly contended that a physician is not an insurer of results, and can be held liable to his patient for damages only in the event that negligence on the part of the surgeon is shown as the proximate cause of injury. Hanners v. Salmon, 216 Ky. 584, 288 S. W. 307. But when evidence is offered tending to sustain the cause of action alleged by the plaintiff, the case must be submitted to the jury for determination. Leadingham v. Hillman, 224 Ky. 177, 5 S. W. (2nd) 1044; Knopp v. Thornton, 199 Ky. 216, 250 S. W. 853."

Longfellow v. Vernon, 57 Ind. App. 611, 105 N. E. 178, is a malpractice case decided by the Indiana Court of Appeals. Plaintiff fell and injured her leg and ankle and defendant accepted the treatment thereof. Plaintiff charged defendant physician with negligence in a failure to treat her said injuries in that defendant was careless and negligent in a proper diagnosis of her injuries. There was a verdict and

judgment for the plaintiff and the same was sustained by the Court of Appeals of Indiana, which in part said:

"In the case at bar the issues present the question of appellants' want of professional skill and learning, and likewise that of negligence in failing to exercise ordinary, or reasonable, care and diligence in diagnosing and treating appellee's injury or disease. In such case all the facts and circumstances of the treatment, the condition and conduct of the patient, the acts and conduct of the physicians, their omissions, if any, and any other facts that may throw light upon the questions at issue are proper matters of evidence to be given by any competent witness, either to support or negative the charge of malpractice. 9 Enc. Evidence p. 841 et seq.; Link v. Sheldon, 136 N. Y. 1, 32 N. E. 696; Mertz v. Detweiler, 8 Watts & S. (Pa.) 376.

"The question of negligence, or failure to exercise ordinary skill and care in the treatment of any particular case does not depend upon the professional skill and learning of the physician, but is to be determined from a consideration of his acts, conduct, omissions, and treatment in the particular instance. If he possessed the highest degree of skill and learning in his profession, and failed to exercise the care and diligence required by the law in treating his patient, his skill and learning could not shield him from the consequences of such negligent treatment. On the other hand, if he did not possess the skill and learning required by the legal standard, but his treatment in the particular instance was proper, he could not be held liable for the want of such skill which resulted in no injury to the patient. Bute v.

Potts, 76 Cal. 304, 18 Pac. 329; Holtzman v. Hay, 118 Ill. 534, 8 N. E. 832, 59 Am. ap. 390."

Spearman & Redfield on the law of Negligence, Vol. 3 (6th Ed.) pages 1629-30, par. 614A, say:

". . . A physician who by negligence in diagnosis pronounces a man afflicted with a loathsome disease and communicates the information to the family of the lady to whom he is engaged, resulting in breaking off the engagement is liable in damages. And it has been justly held that where a physician negligently left, a sponge in the abdomen after an operation though the evidence showed that other capable physicians sometimes did the same thing, that the trial court properly submitted the question of negligence to the jury, since, as said by the court, the fact that all men are careless sometimes does not relieve one from the consequences of his own negligence. Injury resulting from the use of unsterilized instruments is actionable. A physician or surgeon is liable for failure to discover a serious dislocation of the shoulder or fracture of the arm. The attending physicians at a sanitarium are liable for negligence in not seeing that their instructions were carried out. . . ."

See 21 R. C. L. 387-9, par. 33; 48 C. J. 1121-2, par. 110.

It appears that Ethna Hudson used due care in selecting Dr. Weiland to treat her and his skill and professional attainments are of the best, but the declaration alleges that the physician was careless, negligent and unskilfull in the treatment of the plaintiff when he prescribed diathermy, and likewise the diathermist was careless, negligent and unskilful in administering the diathermy treatment and the concurrent acts of the two resulted in burning plaintiff's

hand. In case of Feinstone v. Allison Hospital, Inc., 106 Fla. 302, 143 So. 251, it was said:

"The rule is well settled that if two or more wrong-doers negligently contribute to the personal injury of another by their several acts, *which operate concurrently,* so that in effect the damages suffered are rendered inseparable, they are jointly and severally liable. Feneff v. Boston & Maine R. R., 196 Mass. 575, 82 N. E. 705 (707) and cases cited."

"This court has been recently committed to the rule that when one sustains personal injuries because of the negligence of another and uses due care in selecting a physician or hospital to treat his injuries and in following the advice and instruction of the physician or hospital throughout the treatment, and a poor result is obtained, or increased damages inflicted, because of the negligence of the physician or hospital, the negligence of the one who caused the original injury will be regarded as the proximate cause of the damages flowing from the negligence of the physician or hospital, so as to impute liability therefor against the original tort feasor. J. Ray Arnold Lumber Corp. v. Richardson, 105 Fla. 204, 141 So. Rep. 133. This is the prevailing rule in the United States. See Note 8 A. L. R. 506."

It is well settled that where an injury is the product of the combined negligence of two or more persons, such persons are jointly and severally liable to the person injured and suit may be maintained against one or both of the wrongdoers. See Hernandez v. Pensacola Coach Corp., 141 Fla. 441, 193 So. 555; Sands v. Wilson, 140 Fla. 18, 191 So. 21; Starling v. City of Gainesville, 90 Fla. 613, 106 So. 425; Benedict Pineapply Co. v. Atlantic Coast Line R. Co., 55 Fla.

514, 46 So. 732; 20 L. R. A. (N.S.) 92; Louisville & N. B. Co. v. Allen, 67 Fla. 257, 65 So. 8, L. R. A. 1915C 20.

On a demurrer to a declaration the allegations of fact thereof are admitted to be true. See Roberts v. Dean, 133 Fla. 47, 187 So. 571. Declarations should be construed most strongly against the plaintiff in determining the sufficiency thereof on demurrer. See State ex rel. Dillman v. Tedder, 123 Fla. 188, 166 So. 590. When reviewing or considering in its entirety the second amended first count of plaintiff's second amended declaration, it cannot be said that it wholly fails to state a cause of action and accordingly the judgment should be reversed.

WHITFIELD, J., concurs.