58 So.2d 865 (1952)
DAVIDOW
v.
SEYFARTH.
Supreme Court of Florida, Special Division A.
May 9, 1952.
Rehearing Denied June 3, 1952.
*866 Blackwell, Walker & Gray, Miami, for appellant.
Marx M. Faber, Miami, for appellee.
THOMAS, Justice.
The appellee, plaintiff in the circuit court, brought an action against the appellant, defendant there, for damages he sustained when the car in which they were riding, driven by the defendant, collided with a train of Seaboard Air Line Railroad Company. The mishap, so it was alleged, resulted from the negligence of the defendant.
It was specifically averred that at the time of the collision "the plaintiff, Fred Seyfarth, was a mechanic in the employ of the defendant, Nathan Davidow, * * * and was being transported by the said defendant to his place of employment * *."
Seven defenses were pleaded. Then the complaint was amended to allege that the plaintiff was defendant's guest and that he had been injured through the defendant's gross negligence. The amendment brought forth eleven defenses.
When the matter reached the judge for a pre-trial conference, an order was entered containing the recital that the plaintiff elected to try the case "solely on the theory that the plaintiff was actually at the time of the accident an employee of the defendant, and not within the scope of the Florida Workman's Compensation Law [F.S.A. § 440.01 et seq.] * * *"; so the gross negligence feature and corresponding pleas were abandoned.
This is the background for appellant's first question. He claims that despite the clear-cut issue of employment of the appellee by him, the appellee proved employment by Diaz Construction Company, a partnership of which appellant was a member. This, he insists, constituted a conflict *867 between allegation and proof requiring a reversal of the judgment.
In some of the testimony to which we have been directed we have found that the appellee testified he "worked for Mr. Davidow," asked Mr. Davidow for a job, was called to work by Mr. Davidow and so on. In other instances he said he worked for Diaz Construction Company, the partnership  or presumed he did. If appellee was actually employed by the partnership he could not recover against the appellant individually.
It is clear that appellant and appellee were the only ones who negotiated with reference to the job, but we cannot tell, and we do not see how the jury could have told, whether the appellant was speaking for himself or the partnership. This uncertainty is inherent in the testimony of the appellee, himself. It seems to follow that the position assumed by the appellee was not established by a preponderance of the evidence.
In reply, appellee says that his adversary's position, expounded in the pleas and in the opening statement to the jury, is not consistent with his present one.
As we have said, the complaint contained the direct allegation that Seyfarth was employed as a mechanic by Davidow. In the third defense it was averred that "Nathan Davidow was an employer within the terms and provisions of the Florida Workmen's Compensation Law; that the plaintiff * * * was an employee * *" under the act; that "the defendant * * * had secured compensation * * *" under the act; and that the court had no right to try the controversy, jurisdiction being in the Industrial Commission.
We do not find in this plea any admission that appellee was employed by appellant as distinguished from a partnership of which appellant was a member, for when the plea is read in the light of the order entered at the pre-trial conference, it can only be construed as a presentation of the issue of jurisdiction in the court, if Davidow was acting individually, or the commission, if he was acting as a partner.
Next, we come to the opening statement of appellant which appellee urges as emphasizing a sort of estoppel that arose from the pleading. Counsel simply said that Davidow was a member of a partnership known as Diaz Construction Company and that he purposed to show "that the plaintiff went out to Mr. Davidow's place, and he gave him a job." He also said "that Mr. Davidow was going to take Mr. Seyfarth out to this job, so they could begin work." It would not be just to construe that comment as singling out Davidow as an individual who was doing the employing. Rather it would indicate he was acting for the partnership.
Further to buttress his contention appellee quotes a part of a charge requested by the appellant and given by the court. It started out: "If you find from the evidence in this case that the plaintiff Fred Seyfarth was not an employee of Nathan Davidow individually * * *" and ended with a statement about wanton misconduct and gross negligence, although those features had been discarded at the pre-trial conference. Why this charge was requested or given we are not informed.
Considering the three elements separately and collectively we cannot agree with appellee that the plea, the remarks of counsel or the quoted portion of the charge obviated proof of the relationship or strengthened the foggy evidence of the plaintiff with reference to this feature of the case.
The second question involves the effect upon the claim against the appellant of a "Covenant Not To Sue" executed by the appellee in consideration of money paid him by Seaboard Air Line Railroad Company.
Seyfarth had sued the company in a United States District Court. In the instrument he acknowledged receipt of three thousand dollars, and for himself and his heirs, executors, administrators and assigns covenanted and agreed to have his case dismissed, with prejudice, and to bring no other action against the company.
Under our ruling in Feinstone v. Allison Hospital, Inc., 106 Fla. 302, 143 So. 251, *868 253, two or more wrongdoers contributing to the injury of another by concurrent acts causing damages that are inseparable, become jointly and severally liable. We said there that "Complete satisfaction for any injury received from one person in consideration for his release operates to discharge all who are liable * * *, whether joint or several wrongdoers." Again, in Sands v. Wilson, 140 Fla. 18, 191 So. 21, we held that recompense by one party responsible released others who were jointly and severally liable.
A decision of the question must depend on the true character of the covenant not to sue, that is, whether it was a release as well. It will be recalled that the signer promised not to sue the railroad company. And it was expressly stated that "all rights [he might] have against any other person or persons on account of such damages * * * [were] expressly reserved."
In the case of Louisville & N.R. Co. v. Allen, 67 Fla. 257, 65 So. 8, L.R.A. 1915C, 20, we seem to have allied this court with those courts holding that despite such a reservation as the instrument in this case contained, the acceptance of the money from one joint wrongdoer will discharge all. This ruling was followed in Roper v. Florida Public Utilities Co., 131 Fla. 709, 179 So. 904. The basis for such a decision is, of course, that the claim is held against each tort-feasor for the whole amount, and cannot be separated and allocated to each wrongdoer; therefore, when one of them pays, he pays the entire damage chargeable to all.
The appellee concedes that "`a complete release of one of several joint tort-feasors is a complete release of all,'" but counters with the charges that the railroad company and appellant were not joint tort-feasors and that the release was not complete. We discussed the elements of joint tort-feasorship in Hudson v. Weiland, 150 Fla. 523, 8 So.2d 37, and we now think that what we then said will dispose of this point. We construed the authorities as holding that distinct acts of negligence that concurred in producing an injury gave rise to a joint and several liability; also, that in such an instance there need have been no common duty, common design or concerted action. The predominant element, concurrence of negligence in producing an injury, seems patent from this record. We said in the same case that the circumstances of each case governed. Here they are quite simple: Appellee was riding in a car driven by appellant which collided with a train and claimed both car and train were negligently operated.
The circumstances recorded in the transcript clearly show that the appellee was injured by joint tort-feasors.
We think the release was complete. Not only did appellee bind his heirs, executors, administrators and assigns, as we have pointed out, but he also, to amplify quotations from the covenant, represented that he was relying "solely upon [his] own judgment, belief and knowledge as to the nature, extent and duration of damages for personal injuries, expenses and losses of personal property sustained by [him] by virtue of any and all matters [therein] stated whatsoever * * *." Italics supplied.
We realize that a decision of the second question in appellant's favor probably renders consideration of the third and last question unnecessary, but we will not ignore it.
At the conclusion of the testimony counsel for the plaintiff addressed the jury; then counsel for the defendant announced that he waived his argument. Thereupon the attorney for the plaintiff was asked by the judge if he wished to "close," and his adversary protested as he had a perfect right to do. From there on remarks of counsel for the plaintiff would have been only in rebuttal, and there was nothing to rebut. Germak v. Florida East Coast Railway Company, 95 Fla. 991, 117 So. 391. Whether the error was cured we cannot tell from the record. The court announced that he would allow the attorney for the plaintiff to continue for ten minutes "at which time [counsel for defendant] will present his argument" and that he would then allow the first speaker five minutes to close. If the attorney who had not spoken at all accepted the opportunity to do so *869 the error was probably cured. If he stood his ground, and his opponent was allowed to resume, error was committed. Whether either or both spoke after the opening argument cannot be ascertained from the record.
The judgment is
Reversed.
SEBRING, C.J., and CHAPMAN and MATHEWS, JJ., concur.