DILLON Judge.
 

 *476
 
 Plaintiff Anita Kathleen Parkes appeals from an order granting summary judgment on her medical malpractice claim in favor of Defendant James Howard Hermann ("Dr. Hermann"). We affirm the trial court's grant of summary judgment to Dr. Hermann as Ms. Parkes failed to show evidence of proximate cause.
 

 I. Background
 

 The evidence in the light most favorable to Ms. Parkes shows as follows:
 

 Ms. Parkes exhibited signs of a stroke just after midnight on 24 August 2014. Her family transported her to the emergency room of a nearby hospital, arriving shortly before 2:00 A.M. The proper protocol where a patient presents herself for treatment within three hours of suffering a stroke is to administer Alteplase, a tissue plasminogen activator, (hereinafter "tPA"). Where this drug is administered within three hours of the onset of a stroke, a patient who would otherwise suffer lasting neurological effects has a 40% chance of an improved neurological outcome.
 

 When Ms. Parkes arrived at the hospital, she was seen immediately by Dr. Hermann, who was the on-duty emergency physician. Dr. Hermann failed to properly diagnose that Ms. Parkes had suffered a stroke ; and, accordingly, he did not administer tPA within the three-hour window. Ms. Parkes continues to suffer adverse neurological effects, such as diminished mobility, from her stroke.
 

 Had Dr. Hermann properly diagnosed the stroke, the standard of care would have dictated that he administer tPA. If tPA had been administered, Ms. Parkes would have had a 40% chance of a better neurological outcome than the outcome that she, in fact, is experiencing.
 

 Because tPA was not available at the local hospital where Ms. Parkes was seen, she
 
 *577
 
 would have needed to be transported to the nearest hospital where tPA could be administered. Thus, prompt diagnosis of the stroke was crucial to arrange tPA therapy within the three-hour period.
 

 In April 2017, Ms. Parkes brought this medical malpractice negligence action against Dr. Hermann, claiming that her chance for an improved neurological outcome was diminished by Dr. Hermann's failure to diagnose her stroke and administer tPA. Dr. Hermann moved for summary judgment on the grounds that Ms. Parkes did not satisfy
 
 *477
 
 the "proximate cause" element of her claim. Specifically, Dr. Hermann argues that Ms. Parkes failed to establish that she
 
 more likely than not
 
 (greater than 50% likelihood) would be better but for Dr. Hermann's negligent conduct.
 

 After a hearing on the matter, the trial court entered summary judgment in favor of Dr. Hermann. Ms. Parkes timely appealed.
 

 II. Analysis
 

 We review an order granting summary judgment
 
 de novo
 
 .
 
 Forbis v. Neal
 
 ,
 
 361 N.C. 519
 
 , 524,
 
 649 S.E.2d 382
 
 , 385 (2007). To survive summary judgment in a medical malpractice action, the plaintiff must not only demonstrate that the doctor was negligent, but also that his "treatment proximately caused the injury."
 
 Ballenger v. Crowell
 
 ,
 
 38 N.C. App. 50
 
 , 54,
 
 247 S.E.2d 287
 
 , 291 (1978). All facts and evidence must be viewed "in favor of the party opposing the motion."
 
 Caldwell v. Deese
 
 ,
 
 288 N.C. 375
 
 , 378,
 
 218 S.E.2d 379
 
 , 381 (1975). To establish proximate cause, the plaintiff must show that the injury was more likely than not caused by the defendant's negligent conduct.
 
 See
 

 White v. Hunsinger
 
 ,
 
 88 N.C. App. 382
 
 , 386,
 
 363 S.E.2d 203
 
 , 206 (1988) ("Proof of proximate cause in a malpractice case requires more than a showing that a different treatment would have improved the patient's chances of recovery.").
 

 In the present case, Ms. Parkes has suffered an injury; namely diminished neurological function. To be sure, her stroke was a proximate cause of this injury. Ms. Parkes filed this action, contending that Dr. Hermann's negligence was also a proximate cause of this injury. However, the evidence in the light most favorable to Ms. Parkes only shows that there is a 40% chance that Dr. Hermann's negligence
 
 [1]
 
 caused Ms. Parkes' injury. That is, this evidence shows that had Dr. Hermann properly diagnosed Ms. Parkes and had administered tPA, there was only a 40% chance that Ms. Parkes' condition would have improved. Therefore, we must conclude that the trial court correctly determined that Ms. Parkes failed to put forth evidence showing, more likely than not, that Dr. Hermann's negligence caused Ms. Parkes' current condition.
 

 *478
 
 Ms. Parkes argues, however, that she has suffered a
 
 different
 
 type of injury for which she is entitled to recovery; namely, her "loss of chance" of a better neurological outcome. Though Ms. Parkes would certainly put a high value on being able to live with better neurological function than she is currently experiencing, she had a less than 50% chance of this result when she arrived at the emergency room, no matter what kind of treatment she received from Dr. Hermann. But what she did have early that morning was a
 
 40% chance
 
 of a better neurological outcome had she been administered tPA, and this 40% chance
 
 itself
 
 certainly had some value to Ms. Parkes. The question presented is whether her loss of this
 
 40% chance
 
 , itself, is a type of injury for which Ms. Parkes can recover.
 

 There is a split of authority around the country as to whether a patient may recover for the injury of the mere "loss of chance" of a better medical outcome proximately caused by a physician's negligence: Some states allow a plaintiff to recover for a "loss of chance" injury while others exclusively follow a traditional approach.
 
 See
 

 *578
 

 Valadez v. Newstart, LLC
 
 ,
 
 2008 WL 4831306
 
 , *3-4, 2008 Tenn. App. LEXIS 683, *10-16 (2008) (discussing the different approaches followed around the country).
 

 Under the "traditional" approach, a plaintiff may not recover for the loss of a less than 50% chance of a healthier outcome. But, if the chance of recovery was over 50%, a plaintiff may recover for
 
 the full value of
 
 the healthier outcome itself that was lost by merely showing, more likely than not (greater than 50%), that a healthier outcome would have been achieved, but for the physician's negligence.
 
 Id.
 
 at *4, at *14.
 

 We conclude that North Carolina has not departed from this traditional approach. As such, we must conclude that Ms. Parkes' "loss of chance" at a better result is not a separate type of injury for which she may recover in a medical malpractice negligence action. We note that neither party cites to any North Carolina case where such a claim has been recognized. Rather, our Supreme Court has sustained a nonsuit in a medical malpractice case where the plaintiff's expert merely testified that the plaintiff would have had a better chance of recovery had he received immediate medical attention, stating "[t]he rights of the parties cannot be determined upon chance."
 
 Gower v. Davidian
 
 ,
 
 212 N.C. 172
 
 , 176,
 
 193 S.E. 28
 
 , 30 (1937). And our Court has expressly refused to adopt "loss of chance" as a separate cause of action in a negligence claim case. Specifically, we refused to recognize a claim for the mere increase in risk of a serious disease, stating that any change in our negligence law lies "within the purview of the legislature and not the courts[,]" quoting our Supreme Court:
 

 *479
 
 The excelsior cry for a better system in order to keep step with the new conditions and spirit of a more progressive age must be made to the Legislature, rather than to the courts.
 

 Curl v. American Multimedia, Inc.
 
 ,
 
 187 N.C. App. 649
 
 , 656-57,
 
 654 S.E.2d 76
 
 , 81 (2007) (quoting
 
 Henson v. Thomas
 
 ,
 
 231 N.C. 173
 
 , 176,
 
 56 S.E.2d 432
 
 , 434 (1949) ).
 

 III. Conclusion
 

 "Loss of chance" is not a recognized claim in North Carolina in medical malpractice negligence cases. We, therefore, affirm Judge Caldwell's order granting summary judgment for Dr. Hermann.
 

 AFFIRMED.
 

 Judge STROUD concurs.
 

 Judge BERGER concurs by separate opinion.
 

 BERGER, Judge, concurring in separate opinion.
 

 I concur with the majority.
 

 "[R]ecognition of a new cause of action is a policy decision which falls within the province of the legislature."
 
 Curl v. Am. Multimedia, Inc.,
 

 187 N.C. App. 649
 
 , 656,
 
 654 S.E.2d 76
 
 , 81 (2007) (quoting
 
 Ipock v. Gilmore
 
 ,
 
 85 N.C. App. 70
 
 , 73,
 
 354 S.E.2d 315
 
 , 317 (1987) ). Because "loss of chance" is not a cognizable cause of action in North Carolina, our analysis should begin and end there. Consideration of what the law ought to be is for the people to decide through their elected representatives. It is not the proper subject for judges at any level.
 

 [1]
 

 As we write this opinion based on the evidence viewed in the light most favorable to Ms. Parkes, our opinion should not be construed to resolve any factual issues in this case.
 
 See
 

 Caldwell
 
 ,
 
 288 N.C. at 378
 
 ,
 
 218 S.E.2d at 381
 
 . For instance, our opinion should not be construed as a conclusion that Dr. Hermann, in fact, acted negligently. We also recognize that tPA, like all drugs, has risks as well as potential benefits, but we assume for purposes of summary judgment that Ms. Parkes would have elected to receive tPA if offered and that tPA would have given Ms. Parkes a 40% chance of a better outcome.